# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 9, 2002 Session

## EVAN J. ROBERTS v. MILLER INDUSTRIES, INC., ET AL.

### Appeal from the Chancery Court for Hamilton County
No. 00-1035     W. Frank Brown, III, Chancellor

### FILED APRIL 10, 2003

### No. E2002-01726-COA-R3-CV

In this appeal from the Chancery Court for Hamilton County the Appellants/Defendants, Miller Industries, Inc. and Road One, Inc., contend that the Trial Court erred in awarding the Appellee/ Plaintiff, Evan J. Roberts, damages for breach of contract. The judgment of the Trial Court is affirmed in part and reversed and vacated in part, and the cause is remanded for collection of costs below.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed and Vacated in Part; Cause Remanded

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

William Alexander Blue, Jr., Nashville, Tennessee, for the Appellants, Miller Industries, Inc. and Road One, Inc.

John Tate Rice, Chattanooga, Tennessee, for the Appellee, Evan J. Roberts

### OPINION

On July 31, 1998, RoadOne, Inc.(hereinafter "RoadOne"), a nationwide towing service company and subsidiary of Miller Industries, Inc.(hereinafter "Miller" or "the Company"), offered Mr. Roberts employment in the position of director of sales and marketing. Mr. Roberts accepted this offer and on October 1, 1998, he began work as a full time employee of Road One with an annual salary of $98,000.00.

On September 30, 1998, just prior to the date Mr. Roberts' full time employment with RoadOne began, Miller issued a press release in which it announced it's employment of Goldman, Sachs & Company to act as its financial adviser in connection with the process of exploring "various strategic and financial alternatives to enhance shareholder value." Thereafter, Mr. Roberts received a letter from Miller dated December 14, 1998, which stated as follows:

Dear Evan:

As you know, Miller Industries, Inc. (the "Company") has hired Goldman, Sachs & Co. to explore various strategic alternatives for the Company. This letter is written to you in the context of the Company's continuing evaluation of those alternatives. As of today, the Company has made no definitive decisions with respect to which changes, if any, the Board of Directors will be recommending. However, in this evaluation process, the Company is continuing to examine alternatives which range from no significant changes to a change of ownership, or a separation of the two primary operating units of the Company, or other such material changes. In each of those alternatives that have been considered or are being considered, a critical element is the continued operation of the Company's business segments. Accordingly, key employees will continue to be important to the Company's future.

In an effort to hopefully alleviate any concerns you may have regarding future employment, I want to confirm on behalf of the Company, the Company's commitment to you as a key employee in the following way. In the event that a change in the Company, occurring in connection with the alternatives being considered, results in the elimination of your position within six months after such change, the Company or the Company's subsidiary with whom you are employed would continue your then existing salary for a period of one year from the date of your position being eliminated.

This undertaking by the Company would not be applicable in the context of a failure in your performance or a comparable position with the Company being offered to you as an alternative.

Thanks for all of your hard work in the past and your continued focus in the future. I hope you and your family have a happy and safe holiday season.

The letter is signed by Jeffrey I. Badgley who was then president and chief executive officer of Miller Industries, Inc.

In a press release dated May 13, 1999, Miller announced the conclusion of its board of directors' "study of potential strategic and financial alternatives for the Company." By letter dated May 14, 1999, Miller terminated its employment of Goldman, Sachs & Company.

Trial testimony indicates that the Company was not fairing well financially or performing well in the stock market when Goldman, Sachs & Company was hired. And, according to Mr.

Roberts' testimony, RoadOne was still not doing well during 1999 - "We had lost money and were continuing to lose money." Mr. Roberts further testifies that profits were continuing to suffer during the first six months of 2000.

Minutes from a meeting of Miller's board of directors on June 23, 2000, shows that the board reviewed "the investigation of strategic alternatives that had been pursued by the Company over the last several years, including the extensive consideration of separating Road One from the Company's manufacturing operations." Discussion then took place regarding "the current financial condition of Road One, its future prospects and the pressure being exerted by the Company's banks. The Board agreed that these factors made it desirable to investigate further the potential values that some or all of the Road One operations may have in the market. The Board also directed management to move aggressively to reduce costs in order to rationalize the Road One operations in an effort to restore those operations to profitability."

On or around June 30, 2000, one week after the above described meeting of Miller's board of directors, Mr. Roberts received a letter from RoadOne stating that his employment was being terminated "due to reduction in force resulting from necessary economic organization restructuring." When his employment with RoadOne ended Mr. Roberts received $3,777.60 in severance pay and $2,833.20 for vacation time.

On September 22, 2000, Mr. Roberts filed a complaint in the Chancery Court for Hamilton County against Miller and RoadOne asserting that the December 14, 1998, letter he received from Miller embodied the promise that, in the event that his job was eliminated, he would receive a severance package consisting of continuation of his salary for a period of one year. The complaint maintains that Mr. Roberts "continued to work and provided his loyalty to the defendants, to the exclusion of any other possible offers or abilities to seek other offers" in consideration of the promises made to him of his continuing employment and of the severance package in the event of termination. The complaint further maintains that, upon demand, Miller and RoadOne have not fulfilled these promises. The complaint also charges Miller and RoadOne with promissory fraud and violation of the Tennessee Consumer Protection Act and requests that the case be tried by a jury.

Upon motion of Miller and RoadOne, the Trial Court dismissed Mr. Roberts' claim of violation of the Tennessee Consumer Protection Act. On October 24, 2001, the Trial Court denied a motion filed by Miller and RoadOne to suspend local rules to allow for late filing of a motion for summary judgment.

On November 7 and 8, 2001, the case was tried before a jury. At the conclusion of Mr. Roberts' case in chief Miller and RoadOne moved for a directed verdict on the issue of promissory fraud and on the issue of Mr. Roberts' claim for breach of contract. The Trial Court granted the motion for directed verdict as to promissory fraud, but declined to direct a verdict on the issue of breach of contract. At the close of evidence Miller and RoadOne again moved for a directed verdict on the breach of contract issue; however, the Trial Court did not rule upon this renewed motion. Thereafter, the jury found that the letter of December 14, 1998, was a contract and that Miller and

RoadOne had breached the agreement which it embodied. In consequence of this breach, the jury also found that Mr. Roberts suffered damages in the amount of $128,000.00, plus ten per cent interest as of July 1, 2000. In accord with the jury's verdict, on November 29, 2001, the Trial Court entered judgment in favor of Mr. Roberts in the amount of $145,359.10, representing the $128,00.00 plus ten per cent interest from July 1, 2000, to November 8, 2001.

On December 31, 2001, Miller and RoadOne filed a motion requesting that the Trial Court set aside the jury's verdict as being against the weight of the evidence and further requesting that the Trial Court grant the unaddressed motion for directed verdict which was presented at trial. On that same date Miller and RoadOne also filed a motion for relief from judgment and for remittitur and a motion to set aside the verdict or for a new trial based upon the assertion that Mr. Roberts counsel had made improper and prejudicial statements during trial. The Court sustained the motion for remittitur and reduced the judgment to $98,000.00 plus ten percent interest. The other motions were denied and this appeal followed.

Although several issues have been raised by the parties we find it necessary to address but one of these issues and all other issues are pretermitted by our conclusions with regard to that issue which is restated as follows:

Did the Trial Court err in entering a judgment in favor of Mr. Roberts because the jury's finding on which such judgment was based was not supported by material evidence?

In a case such as this one where a trial court has approved a jury's verdict we may not set aside the trial court's judgment unless the record contains no material evidence to support the verdict. If there is any material evidence to support the verdict, we must affirm the judgment. *Moss v. Sankey*, 54 S.W.3d 296 (Tenn. Ct. App. 2001).

The jury's finding that the letter of December 14, 1998, was a contract is apparently not contested in this appeal. The sole matter addressed by this Court is how that contract should be interpreted.

Mr. Roberts asserts that the severance package of one year's salary upon termination of his employment derives from a promise made to him by Miller in the letter of December 14, 1998. That promise appears in the second sentence of the second paragraph of the letter as set forth above. "In the event that a change in the Company, occurring in connection with the alternatives being considered, results in the elimination of your position within six months after such change, the Company or the Company's subsidiary with whom you are employed would continue your then existing salary for a period of one year from the date of your position being eliminated."

Miller and RoadOne point out that the first sentence of the December 14, 1998, letter states that Goldman, Sachs & Company has been hired "to explore various strategic alternatives for the Company." They apparently argue that the words "alternatives being considered" can only be defined in the context of Millers' engagement of Goldman, Sachs & Company and, therefore,

"alternatives being considered" must refer exclusively to those alternatives suggested by Goldman, Sachs & Company. They assert that no changes were ever made in connection with any alternatives suggested by Goldman, Sachs & Company and that, in fact, their relationship with that entity was terminated in May of 1999 - over a year prior to elimination of Mr. Roberts' position. Accordingly, they contend that the condition set forth in the agreement has not been met.

Mr. Roberts argues that the words "alternatives being considered" should not be construed to mean strictly those alternatives suggested by Goldman, Sachs & Company. In support of this argument, he notes that at no point does the letter specifically state that the agreement is conditioned solely upon implementation of a change prompted by a suggestion by Goldman, Sachs & Company. He further notes that the letter refers to "alternatives that have been considered" indicating that the agreement contemplates implementation of alternatives considered by Miller in the past, before it engaged Goldman, Sachs & Company. Mr. Roberts also notes the letter's use of the term "strategic alternatives." He argues that the Company considered "strategic alternatives" both before Goldman, Sachs & Company was employed and after their employment ended as shown in the minutes of meetings held by Millers' board of directors. In this regard, Mr. Roberts presents the minutes of a meeting on May 29, 1998, which refer to "consideration of strategic alternatives, including those that continued the status quo and those that could result in a change of control of a corporation." Mr. Roberts also presents the previously referenced minutes of the meeting held on June 23, 2000, which state "Mr. Miller then reviewed with the Board the investigation of strategic alternatives that had been pursued by the Company over the last several years...." Under Mr. Roberts analysis it appears that if, *at any time,* Miller were to implement a change based upon its consideration of a "strategic alternative", regardless of who may have suggested that alternative, he would be entitled to the severance package described in the letter if his job ended as a result of and within six month of such change.

Our review of the letter of December 14, 1998, compels us to disagree with the analyses of both parties as to the condition under which the Company would be obligated to pay Mr. Roberts his annual salary in event of the elimination of his job. It is our determination that the relevant inquiry is whether Mr Roberts' position has been eliminated as the result of the implementation of an alternative being considered *at the time the letter was written* regardless of who might have suggested such alternative. The words "alternatives being considered" are couched in the present tense and necessarily refer to alternatives being considered by the Company at the time the letter was written. They do not refer to alternatives which had been considered in the past but were no longer being considered at the time of the letter. Nor do they refer to alternatives which might be considered in the future but were not being considered when the letter was written.

It is undisputed that Mr. Roberts job was terminated as part of a reduction in the workforce which culminated in the elimination of all sales and marketing positions at RoadOne. Mr. Roberts argues that such a reduction in workforce constitutes a material change and points out that the letter states that "the Company is continuing to examine alternatives which range from no significant changes to a change of ownership, or a separation of the two primary operating units of the Company, or other such *material changes.*"( emphasis added) While we do not necessarily disagree

that reduction in the workforce is a material change we find no proof in the record showing that it was a material change being considered by Miller at the time the letter was written.

Because of the absence of any evidence showing that Miller was considering the alternative of a reduction in its workforce when the letter of December 14, 1998, was written., it is our conclusion that the Trial Court erred in approving the jury's finding that Miller and RoadOne breached the agreement embodied in the letter of December 14, 1998.

For the foregoing reasons we affirm the judgment of the Trial Court to the extent that it approves the jury's finding that the letter of December 14, 1998, was a contract; however, we reverse the judgment of the Trial Court to the extent that it approves the jury's finding that Miller and RoadOne breached such contract and vacate the Trial Court's award of damages to Mr. Roberts. Costs of appeal are adjudged against Evan J. Roberts. We remand the case to the Trial Court for collection of costs below.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE